UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EARL WILLIAMS,

                    Plaintiff,

            -against-                                    22-CV-0316 (LTS)

CITY DERM, et al.,                                       ORDER OF DISMISSAL

                    Defendants.

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is appearing *pro se*, brings this action invoking federal question jurisdiction under 28 U.S.C. § 1331, and alleging that Defendants denied him medical treatment and discriminated against him. By order dated February 24, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action.

## STANDARD OF REVIEW

      The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

Plaintiff, who is a resident of the Bronx, brings this action against two City Derm clinics located in Harlem and the Bronx (City Derm Harlem and City Derm Bronx). He uses the court's form complaint for civil cases and invokes the court's federal question jurisdiction. Plaintiff alleges that Defendants denied him medical treatment and discriminated against him.

The following assertions are taken from the complaint. Plaintiff had developed cysts on his back and on his face between his nose and lip. On November 2, 2021, he entered City Derm Harlem and made some inquiries concerning a surgical procedure to remove the cysts, particularly those on his face, and whether City Derm Harlem would accept his insurance, United Healthcare. (ECF 2, at 8.) The staff of City Derm Harlem assured Plaintiff that they could perform the procedure and that they did accept his insurance. Plaintiff was given an application, which he took with him to complete outside the office. (*Id*.)

Plaintiff later returned to City Derm Harlem with the completed application, and after it was reviewed, he was directed to sit. A few minutes later, a man came and escorted Plaintiff to a room where a young black lady took a picture of his face and back. (*Id*.) The man looked at Plaintiff's face, said "that it was about an inch long and an inch wide" and told Plaintiff that City Derm Harlem would contact him in two to three days. (*Id*.)

Three weeks went by and Plaintiff heard nothing from City Derm Harlem. (*Id*.) He returned to the clinic and inquired about the lack of a response, but he was again told that he would receive a response within two to three days. Plaintiff did not receive a response. (*Id.* )

Plaintiff then contacted United Healthcare, and requested assistance finding a clinic to take care of the cysts. (*Id*.) United Healthcare gave him the phone number and address of a clinic in the Bronx. Plaintiff called the office and he was assured that the clinic could take care of the problem, without having seen him, and he made an appointment for December 9, 2021. (*Id*.)

On December 9, 2021, Plaintiff went to the clinic and saw a doctor who stated during their discussion "that anything removed from [Plaintiff's] body would be sent for analysis for cancer, that's the law." (*Id.* at 9.) After that statement, the doctor said that the procedure would not be done that day and directed Plaintiff to speak with the receptionist, who asked him if he wanted the matter dealt with immediately or if he wanted to wait until after Christmas. (*Id.*) Plaintiff stated he wanted it to be done immediately, and the receptionist made an appointment for two days later, at a different address.(*Id.*)

On December 11, 2021, Plaintiff went to his scheduled appointment and saw the same doctor. The doctor informed Plaintiff that he could not do the surgical procedure on Plaintiff's face because "he might cut too deep and that the face had a lot of layers and he did not want to take a chance" on cutting too deeply into Plaintiff's face, but "would take a chance on back surgery." (*Id.*) Plaintiff told the doctor that he appreciated the doctor's honesty, but wanted the procedure done on both his face and back at the same time. Plaintiff then told the doctor "he would leave to go and check out the emergency room at the hospital." (*Id.*)

Plaintiff immediately went to Jacobi Hospital, where after waiting for a couple of hours, the medical staff checked his "blood, etc." (*Id.*) Plaintiff was questioned about his low pulse rate, which he has had for at least 15-20 years. He was then placed in a room and directed to undress to his underwear. About 30 to 40 minutes later, a young lady informed Plaintiff that he was being admitted to the hospital. "It was [Plaintiff's] impression [he] was going to be treated for what he went there for and what [he] had been complaining about." (*Id.*) Instead, he learned hours later that the hospital staff, who were "inhuman and disrespectful," had admitted him to the hospital for a pacemaker. (*Id.*) Plaintiff did not have the surgery he wanted performed and had "to sign a release on [his] own risk" before he was allowed to leave the hospital. (*Id.*)

Plaintiff then decided to contact his own medical doctor, who referred him to another clinic in the Bronx. Plaintiff went to that medical office, only to discover that they did not do cosmetic surgery at that particular location. Plaintiff got a referral to an Essen clinic, and had his medical center faxed his information to that clinic. When Plaintiff contacted the clinic, he "found Essen to have a poor system," and to be "very un concerned [sic] with the patients." (*Id*. at 10.)

In the weeks following his visits to City Derm Harlem, Plaintiff contacted several different places but he could not get the immediate medical care he needed. (*Id*.) He then received a bill, which he intended to dispute by calling the telephone number on the bill, but instead of following his intention to inquire about the bill, he requested an appointment. (*Id*.) Not realizing he was calling City Derm Harlem, Plaintiff informed the young lady on the phone, when she asked whether he had been at their clinic before, that he had never been there. When he gave his name and information, however, the young lady said that he had been there before, at which point he realized he had called City Derm Harlem. (*Id*.) The young lady then told him that City Derm had six locations, and he made an appointment for January 6, 2022, at the medical office closest to him in the Bronx.(*Id*.)

On January 3, 2022, when Plaintiff went to his bank on Fordham Road, he decided to check out the nearby City Derm Bronx for which he had scheduled the appointment. Unlike City Derm Harlem, which had two black persons at the front desk passing out applications, City Derm Bronx had Spanish ladies doing the same thing. (*Id*. at 12.) Plaintiff told a Spanish lady that he had an appointment there for January 6, but she stated he did not have an appointment. Plaintiff reiterated that he had an appointment, showed the lady the cysts on his face, took out money he had just withdrawn from the bank, and offered to prepay for the surgery. (*Id*.) The Spanish lady laughed at him and stated he would hear from her in three days. "This is the same spiel they said

in Harlem," and Plaintiff "took this personal because this is the second time [he had] been denied treatment through a facility put up in the neighborhood." (*Id*.) He had been turned down for medical treatment by the same people who had sent him a bill for no service, for "no more than taking a picture of [his] face and [his] back." (*Id*.)

The next day, Plaintiff again called the telephone number from the bill, and the same woman who had made the appointment for City Derm Bronx answered the phone. He asked her about the "fake appointment," and provided his name and date of birth. (*Id*.) The young lady then stated that there must have been a mistake and that he was calling the main office. She then placed him on hold, but he was disconnected. Plaintiff redialed the number but was "blocked." (*Id*.) Plaintiff did not hear from City Derm after the phone call.

Plaintiff brings this action asserting that Defendant have violated his rights by twice denying him medical treatment. He claims that the denials of treatment were "[n]ot by accident[,] not by mistake," [e]veryone was aware of what was going on." (*Id*.) Plaintiff asserts that [n]o one should be treated and disrespected in a certain in-human way," and he wants government officials to look into the various medical offices he visited. Plaintiff also seeks money damages "[f]or [his] pain for [his] hate and discrimination and the bias." (*Id*.)

## DISCUSSION

Plaintiff invokes the Court's federal question jurisdiction, asserting that Defendants denied him medical treatment and discriminated against him in violation of his rights. Plaintiff does not specify a federal cause of action, nor can the Court identify a viable federal claim arising from Plaintiff's assertions. There is no general right to medical care, particularly by private entities such as the defendants in this action.[1] A right to medical care by government

---

[1] 42 U.S.C. § 1983 provides a vehicle for redress of a deprivation of federally protected rights by persons acting under color of state law. To state a claim under Section 1983, a plaintiff

authorities has been found only where there is a special custodial or other relationship between the person and the state. *See Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1035 (11th Cir. 1987); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197-200 (1989); *Henry v. New York City Hosp. & Health Corp.*, No. 00-CV-2537 (JSM) (AJP), 2000 WL 858345, at * 1 (S.D.N.Y. June 28, 2000). Plaintiff's denial of medical treatment claim fails because he does not have a general right to medical care, and he fails to allege facts suggesting that Defendants are state actors, and that there is a special custodial or other relationship between himself and Defendants giving rise to a right to medical care.

---

must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48–49 (1988). Private parties are generally not liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As City Derm Harlem and City Derm Bronx are private entities who are not alleged to have been working for any state or other government body, and Plaintiff does not allege facts suggesting that these entities' actions could be "fairly attributable" to the state, the defendants are not subject to liability under Section 1983.

Plaintiff's assertion that he was also denied medical treatment at Jacobi Hospital may implicate a claim under Section 1983. Jacobi Hospital is operated by the New York City Health+Hospitals (H+H), which is a public benefit corporation created by New York State law. *See* N.Y. Unconsol. Law § 7382; *see also Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). As a municipal corporation, H+H, its hospitals, and employees are state actors for the purposes of Section 1983. *See Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983); *Mejia v. NYC Health & Hosps. Corp.*, ECF 1:16-CV-9706, 130, 2018 WL 3442977, at 5 (S.D.N.Y. July 17, 2018). H+H has the capacity to be sued under state law. *See* N.Y. Unconsol. Law § 7385(1).

Plaintiff does not, however, name either Jacobi Hospital or H+H as a defendant, and he fails to assert facts suggesting a Section 1983 claim for relief against these entities. As discussed above, Plaintiff does not allege any special custodial or other relationship between him and Jacobi Hospital that would entitle him to medical treatment, and he does not allege any facts suggesting that H+H had a policy, custom, or practice that caused a violation of his right. *See Rookard v. Health & Hosp. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) (for a Section 1983 claim against the H+H, formerly "HHC", a plaintiff must assert facts that satisfy the municipal liability requirements of *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)).

Plaintiff also fails to allege facts suggesting that Defendants discriminated against him in violation of a federal law because he does not identify a specific federal provision giving rise to his discrimination claim. Although Plaintiff specifically refers to the race of several people he interacted with, he does not identify his own race and, further, alleges no facts suggesting that Defendants treated him differently from other similarly situated individuals, or that any such treatment was based on an immutable characteristic – such as race – that would give rise to a federal claim. Plaintiff asserts only conclusory claims of discrimination, without any facts to suggest that Defendants subjected him to discrimination by denying him medical treatment or violated his rights in any way because of animus against him as a member of any protected group. As the Court finds no deprivation of a federally secured right, Plaintiff's discrimination claims must be dismissed for failure to state a claim on which relief may be granted.

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). All other pending matters in this case are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   April 15, 2022
        New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

8